IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| MARKING OBJECT VIRTUALIZATION INTELLIGENCE, LLC, <br><br> Plaintiff, <br><br> v. <br><br> HITACHI LTD.; HITACHI DATA SYSTEMS CORPORATION; AND HITACHI ID SYSTEMS, INC., <br><br> Defendants. | CASE NO. 2:16-cv-01055-JRG |

**HITACHI, LTD.'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT UNDER FED. R. CIV. P. 12(b)(2) AND 12(b)(6)**

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION ........................................................................................................ 1

II.     BACKGROUND .......................................................................................................... 1

        A.      The Original and Amended Complaints and the Accused Products...................... 1

        B.      The HL Jurisdiction Allegations in the FAC ........................................................ 3

        C.      The FAC Continues Improper "And/Or" Group Pleading .................................... 4

        D.      The FAC Continues Improper "Information and Belief" Allegations.................... 4

        E.      The FAC Continues to Lack Pleaded Facts for Direct Infringement..................... 6

        F.      The FAC Continues to Lack Pleaded Facts for Indirect Infringement ................ 11

III.    DISMISSAL IS APPROPRIATE .................................................................................. 12

        A.      Dismissal Under Fed. R. Civ. P. 12(b)(2) Is Required ........................................ 12

                1.      The Federal Circuit Standards for Personal Jurisdiction .......................... 12

                2.      There Is No General Jurisdiction Over HL................................................ 14

                3.      There Is No Specific Jurisdiction Over HL .............................................. 15

        B.      Dismissal Under Fed. R. Civ. P. 12(b)(6) is Required ........................................ 18

                1.      The Standards for Rule 12(b)(6) ............................................................... 18

                        a.      The Requirements For Pleading Direct Infringement.................... 18

                        b.      The Requirements For Pleading Indirect Infringement ................ 20

                2.      The Court Should Dismiss the FAC Under Fed. R. Civ. P. 12(b)(6) ....... 21

                        a.      No Plausible Direct Infringement Claim Is Stated ....................... 21

                        b.      No Plausible Indirect Infringement Claim Is Stated ..................... 26

                        c.      The FAC Should Be Dismissed With Prejudice ........................... 28

IV.     CONCLUSION............................................................................................................. 29

4821-7900-9354

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Affinity Labs of Tex., LLC v. Toyota Motor N. Am.*,
No. W:13-CV-365, 2014 WL 2892285 (W.D. Tex. May 12, 2014) .................................21, 28

*Asahi Metal Indus. Co. v. Super. Ct. of Cal.*,
480 U.S. 102, 107 S. Ct. 1026, 94 L. Ed. 2d 92 (1987)...........................................................13

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).......................................................................1, 18, 19, 26, 28, 29

*Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*,
566 F.3d 1012 (Fed. Cir. 2009).............................................................................................12

*Automated Transaction LLC v. New York Cmty. Bank*,
No. 12-cv-3070, 2013 WL 992423 (E.D.N.Y. Mar. 13, 2013)....................................20, 25, 27

*Avocent Huntsville Corp. v. Aten Int'l Co.*,
552 F.3d 1324 (Fed. Cir. 2008)..............................................................................................12

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)..............................................................................................1, 18, 19, 28

*In re Bill of Lading Transmission and Processing Sys. Patent Litig.*,
681 F.3d 1323 (Fed. Cir. 2012).............................................................................................18

*Burger King Corp. v. Rudzewicz*,
471 U.S. 462, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985).......................................................14

*Campbell Pet Co. v. Miale*,
542 F.3d 879 (Fed. Cir. 2008)...............................................................................................17

*Core Wireless Licensing S.A.R.L v. Apple Inc.*,
No. 6:14-cv-752-JRG-JDL, 2015 WL 4910427 (E.D. Tex. Aug. 14, 2015) ..........................27

*Eon-Net LP v. Flagstar Bancorp*,
653 F.3d 1314 (Fed. Cir. 2011)...............................................................................................4

*Ferrer v. Chevron Corp.*,
484 F.3d 776 (5th Cir. 2007) ................................................................................................19

*Foman v. Davis*,
371 U.S. 178 (U.S. 1962)................................................................................................28, 29

*Global-Tech Appliances, Inc. v. SEB S.A.*,
 131 S. Ct. 2060 (2011) ...................................................................................................21

*Godo Kaisha IP Bridge 1 v. Broadcom Limited, et al.*,
 No. 16-134, 2017 U.S. Dist. LEXIS 45416 (E.D. Tex. March 1, 2017) .....................12, 16, 17

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
 564 U.S. 915, 131 S. Ct. 2846, 180 L. Ed. 2d 796 (2011) .................................13, 15

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
 466 U.S. 408, 104 S. Ct. 1868, 80 L. Ed. 2d 404 (1984) .........................................13

*Inamed Corp. v. Kuzmak*,
 249 F.3d 1356 (Fed. Cir. 2001) ..................................................................12, 14, 16

*Int'l Shoe Co. v. Washington*,
 326 U.S. 310, 66 S. Ct. 154, 90 L. Ed. 95 (1945) ......................................13, 14, 17

*Jones v. Nueces County*,
 2012 U.S. Dist. LEXIS 115006 (S.D. Tex. Aug. 15, 2012) .....................................29

*LBS Innovations, LLC v. Nokia USA Inc.*,
 No. 2:15-CV-1972-JRG, 2016 U.S. Dist. LEXIS 80303 (E.D. Tex. June 21,
 2016) ...........................................................................................................18, 25

*Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*,
 594 F.3d 383 (5th Cir. 2010) .................................................................................18

*Loyalty Conversion Sys. Corp. v. American Airlines, Inc. et al.*,
 66 F. Supp. 3d 813, 826 (E.D. Tex. 2014) ..............................................................16

*Macronix Int'l Co., Ltd. v. Spansion Inc.*,
 4 F. Supp. 3d 797, 804 (E.D. Va. 2014) .................................................................19

*Maynard v. Phila. Cervical Collar Co.*,
 18 F. App'x 814 (Fed. Cir. 2001) ...........................................................................16

*MEMC Electronic Materials, Inc. v. Mitsubishi Materials Silicon Corp.*,
 420 F.3d 1369 (Fed. Cir. 2005) ..............................................................................20

*MONEC Holding AG v. Motorola Mobility, Inc.*,
 897 F. Supp. 2d 225 (D. Del. 2012) ..................................................................21, 23

*Monkton Ins. Services, Ltd. v. Ritter*,
 768 F.3d 429 (5th Cir. 2014) ............................................................................13, 15

*NexLearn v. Allen Interactions, Inc.*,
 -- F.3d --, 2017 U.S. App. LEXIS 10735 (Fed. Cir. June 19, 2017) ..................14, 17

*North Star Innovations, Inc. v. Toshiba Corp.*,
   No. 16-115-LPS-CJB, 2016 U.S. Dist. LEXIS 168670 (D. Del. Dec. 6, 2016) .......... 20, 25, 27

*Nu-You Techs., LLC v. Beauty Town Int'l Inc*.,
   No. 3:15-CV-03433-N, 2016 U.S. Dist. LEXIS 125151 (N.D. Tex. July 7,
   2016) ......................................................................................................................... 19, 24

*Nuance Commc'ns, Inc. v. Abbyy Software House*,
   626 F.3d 1222 (Fed. Cir. 2010) .............................................................................. 17

*PLS-Pac. Laser Sys. v. TLZ Inc.*,
   No. 06-4585, 2007 U.S. Dist. LEXIS 53176 (N.D. Cal. July 9, 2007) ................................... 20

*Raj v. La. State Univ.*,
   714 F.3d 322 (5th Cir. 2013) .................................................................................. 18

*Rosas v. Bexar Cty.*,
   No. 5:14-CV-1082-DAE, 2015 WL 1955406 (W.D. Tex. Apr. 29, 2015) ............................. 18

*Rotec Indus., Inc. v. Mitsubishi Corp.*,
   215 F.3d 1246 (Fed. Cir. 2000) .............................................................................. 20

*Tierra Intelectual Borinquen, Inc. v. ASUS Computer Int'l, Inc.*,
   No. 2:13-CV-38-JRG, 2014 WL 894805 (E.D. Tex. Mar. 4, 2014) ........................... 21, 26, 27

*Trintec Indus., Inc. v. Pedre Promotional Prods., Inc.*,
   395 F.3d 1275 (Fed. Cir. 2005) .............................................................................. 17

*Twombly. Ruby Sands LLC v. Am. Nat'l Bank of Tx.*,
   No. 2:15-CV-1955-JRG, 2016 U.S. Dist. LEXIS 83897 (E.D. Tex. June 28,
   2016) ......................................................................................................................... 19, 28

*Wistron Corp. v. Phillip M. Adams & Assocs., LLC*,
   No. 10-4458, 2011 U.S. Dist. LEXIS 102237 (N.D. Cal. Sept. 12, 2011) ............................. 20

*Xilinx, Inc. v. Papst Licensing GmbH & Co, KG*,
   848 F.3d 1346 (Fed. Cir. 2017) .............................................................................. 12, 14

**Statutes**

35 U.S.C. § 271(a) ........................................................................................................ 4, 20

35 USC § 271(b) ............................................................................................................ 11, 20, 21

Federal Circuit Law ...................................................................................................... 12

**Other Authorities**

Fed. R. Civ. P. 8 ............................................................................................................ 28

Fed. R. Civ. P. 8(a) ........................................................................................................................19

Fed. R. Civ. P. 8(a)(2)....................................................................................................................20

Fed. R. Civ. P. 11 .......................................................................................................................4, 28

Fed. R. Civ. P. 12(b)(2).............................................................................................................1, 12, 31

Fed. R. Civ. P. 12(b)(6)...................................................................................................1, 18, 21, 28, 31

Fed. R. Civ. P. 15(a)(1)...................................................................................................................28

4821-7900-9354

## I.      INTRODUCTION

Hitachi, Ltd. ("HL") moves pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(6) to dismiss the First Amended Complaint ("FAC," Dkt. 18) of Plaintiff Marking Object Virtualization Intelligence, LLC ("Plaintiff").   The Court lacks personal jurisdiction over HL because HL is not incorporated in Texas, has no principal place of business in Texas, does not make, use, sell, or offer to sell in Texas any of the products accused of infringement, and has no involvement with any third-party customers relative to their purchase of or use of such products.

Plaintiff has also failed to state a claim upon which relief can be granted.   In particular, HL seeks dismissal **_with prejudice_** of Plaintiff's claims for direct and indirect patent infringement of U.S. Patents Nos. 6,802,006 (the "'006 Patent") and 7,650,504 (the "'504 Patent"), which are asserted against HL, due to the failure of Plaintiff to meet the plausibility standard of pleading as set forth by the Supreme Court in _Iqbal_ and _Twombly_ after two attempts. Moreover, Plaintiff has not properly alleged any activity by HL in the United States with respect to the accused products.   As confirmed herein, HL does not have any such activity.   Accordingly, it would be futile to allow Plaintiff leave to amend because an infringement claim against HL is an impossibility.

## II.     BACKGROUND

### A.      The Original and Amended Complaints and the Accused Products

On September 28, 2016, Plaintiff filed a Complaint (Dkt. 1) against Hitachi Data Systems Corporation ("HDS"), Hitachi America, Ltd. ("HAL"), HL, and Hitachi ID Systems, Inc. ("HID").   The Complaint's direct and indirect patent infringement allegations failed to meet the pleading requirements set forth by the Supreme Court in _Iqbal_ and _Twombly_.   As such, Defendants HDS and HAL filed a Motion to Dismiss the original Complaint under Fed. R. Civ. P. 12(b)(6) in November 2016.[1]   (_See_ Dkt. 16).   That Motion explained the manifest deficiencies in Plaintiff's Complaint and why it should be dismissed as failing to state a claim.   (_Id._)   Those

---

[1] HL and HID had not been served at that time and, thus, did not join that Motion.

bases included improper "group pleading," improper "information and belief" pleading, and lack of plausible claims for direct and indirect infringement.

In response, Plaintiff filed the FAC in a weak attempt to cure the original Complaint's deficiencies.  (*See* Dkt. 18).  The FAC, while changing parties,[2] continued to allege in broad-brush style, as did the original Complaint, that subsets of the accused Hitachi entities have directly and indirectly infringed the three asserted patents.  The FAC alleges that "HDS and/or HL" infringe "at least" Claims 1, 3, 14, and 15 of the '006 Patent and "at least" Claims 1 and 10 of the '504 Patent.  (Dkt. 18 at ¶¶ 71, 105).[3]

The '006 and '504 Patents are related to each other as the '504 Patent is a division of the '006 Patent.  As such, those patents share a specification and have similar claims.  Those patents are directed to systems and methods that, among other things, generate digital signatures from executable images where the generation of the digital signatures excludes "pointers" or "locations" in the executable images that are "in need of fixing up by a program loader" or are "being modified by a program loader" or have "been bound to a selected address in the memory by a program loader."  These are core aspects of all of the asserted claims from the patents.

The FAC broadly accuses the "Hitachi Content Platform Versions 7.1.2, 7.2, 7.2.1, 7.2.2, and 7.2.3, [and] Hitachi Content Platform Anywhere Version 2.1," of infringing the '006 Patent and broadly accuses the "Hitachi Command Suite Versions 8.0.0, 8.1.0, 8.2.1, 8.4, 8.4.1, and 8.5.0," of infringing both the '006 Patent and the '504 Patent.  (*Id*. at ¶¶ 70, 104).

The same defects that were present in the original Complaint remain present in the FAC. It is clear that after two attempts, Plaintiff simply has no basis to have filed, much less to be proceeding with, this action.

---

[2]   The FAC dropped HAL as a Defendant and added Hitachi ID Systems (U.S.A.), Inc. ("HIDUSA").  HIDUSA was subsequently dismissed from the case.  *See* Dkt. No. 32.

[3]   The FAC alleges that "HID and/or HIDUSA and/or HDS" infringe "at least" Claims 1, 21, 41, and 52 of U.S. Patent No. 7,124,114 (the "'114 Patent").  (*Id*. at ¶ 129).

4821-7900-9354

**B.     The HL Jurisdiction Allegations in the FAC**

The FAC alleges nothing of substance to establish general or specific jurisdiction over HL.  The FAC merely alleges, and then upon mere information and belief, that HL is a Japanese company located in Japan with subsidiaries (¶ 10), and that its subsidiaries have asserted patents in the Eastern District (¶ 11).  The FAC then asserts that "Hitachi has committed acts within the Eastern District of Texas giving rise to this action and has established minimum contacts with this forum such that the exercise of jurisdiction over Hitachi would not offend traditional notions of fair play and substantial justice." (¶ 13).   That "Hitachi" however, is not limited to Hitachi, Ltd., but instead is defined in the first paragraph of the FAC to be all of the Hitachi entities named as defendants.

HL is a Japanese company located in Japan.  HL attaches hereto as Ex. 1 the Declaration of Mr. Shigeyuki Sudo, who states that HL: (1) is not incorporated or headquartered in Texas, and has no principal place of business in Texas; (2) does not have any offices or other business or physical presence in Texas; (3) has no telephone numbers or mailing addresses in Texas; (4) does not own, lease, or possess any real property in Texas; (5) is not registered to do business anywhere in Texas and does not have an agent for service of process in Texas; (6) has no employees in Texas; and (7) has no continuous and systematic contacts with Texas.  (Sudo Dec. at ¶¶ 2-8).

Mr. Sudo also states that HL does not make, use, sell, or offer to sell in Texas, or anywhere else in the United States, any of the products accused of infringement in the FAC and has no involvement with third-party customers relative to their purchase of or use of such products.  (*Id*. at ¶¶ 9-10).

Mr. Sudo addresses HL's Internet activities, stating that HL "conducts no business over the Internet with persons in Texas in terms of offering products or services to the residents of Texas or by maintaining any customer support portal."  (*Id*. at ¶ 11).  Mr. Sudo states that HL (a) has not purposefully directed any activities at residents of Texas; and (b) is not responsible for any infringement by others that occurs in Texas.  (*Id*. at ¶¶ 15-16).

3

4821-7900-9354

## C.   The FAC Continues Improper "And/Or" Group Pleading

With little explanation as to which entities are responsible for which infringing acts or products, a mix of the four named Hitachi entities are accused in the FAC of the infringing acts regarding the products and patents.  As was the case with the original Complaint, the FAC's infringement allegations extensively use "and/or" (or simply "Hitachi") to group Hitachi entities and collectively accuse them of infringement.  Plaintiff's "and/or" "group pleading" allegations as to the '006 Patent are typical with respect to HDS and HL:

> 28.  At least <u>HDS and/or HL</u> design, make, use, sell, and/or offer for sale in the United States products and/or services for determining the authenticity of an executable image.

> 70.  <u>On information and belief</u>, <u>HDS and/or HL</u> have directly infringed and continue to directly infringe the '006 patent by, among other things, making, using, offering for sale, and/or selling content protection technology, including but not limited to the Hitachi '006 Products, which includes technology for verifying the authenticity of a software image.

> 71.  By making, using, testing, offering for sale, and/or selling verification and authentication products and services, including but not limited to the Hitachi '006 Products, <u>HDS and/or HL</u> has injured MOV Intelligence and is liable to MOV Intelligence for directly infringing one or more claims of the '006 patent, including at least claims 1, 3, 14, and 15, pursuant to 35 U.S.C. § 271(a).

(Dkt. 18 at ¶¶ 28, 70, 71 (emphasis added); *see also id.* at ¶¶ 72-75 (indirect infringement allegations); ¶¶ 80, 85, 104-108 ['504 Patent]).  This type of ambiguous pleading provides minimal linkage between the accused Hitachi entities and the specific alleged acts of infringement and demonstrates the lack of plausibility of the asserted infringement claims.

## D.   The FAC Continues Improper "Information and Belief" Allegations

Significantly, the vast majority of the paragraphs of the FAC alleging infringement either begin with or include "on information and belief,"[4] just as they did in the original Complaint.  As

---

[4]  Such pleading clearly indicates the absence of a proper Rule 11 pre-filing investigation and is sanctionable.  *See, e.g., Eon-Net LP v. Flagstar Bancorp*, 653 F.3d 1314, 1328-29 (Fed. Cir. 2011) (affirming Rule 11 sanctions where infringement allegations were legally baseless and reflected lack of pre-suit investigation).

such, the FAC's infringement allegations are either completely bare of any actual facts supporting the allegation or expressly qualified with respect to the contained allegations.  For example, with respect to the '006 Patent, Plaintiff makes the following wholly unsupported allegations, "on information and belief:"

> 35.  On information and belief, one or more Hitachi subsidiaries and/or affiliates use the Hitachi Content Platform in regular business operations.
>
> 36.  On information and belief, one or more of the Hitachi Content Platform products include authentication technology.
>
> 43.  On information and belief, the Hitachi Content Platform includes the ability to store "appendable objects," "access control lists," and "metadata" with fixed-content data.
>
> 53.  On information and belief, the Hitachi Command Suite Product is available to businesses and individuals throughout the United States.
>
> 54.  On information and belief, the Hitachi Command Suite Product is provided to businesses and individuals located in the Eastern District of Texas.
>
> 64.  On information and belief, the Hitachi Command Suite Product contains functionality that generates a warning if the reference digital signature does not match the authenticity digital signature.
>
> 66.  On information and belief, the Hitachi Command Suite Product contains functionality wherein the digital signature is generated based on a first and second point in time.  For example, the Hitachi Command Suite Product generates a reference digital signature at a first point in time.  Subsequently, an authenticity digital signature is generated (at a second point in time).
>
> 67.  On information and belief, the Hitachi Command Suite Product comprises a system and method that can verify the identity a computer application.
>
> 68.  On information and belief, the Hitachi Command Suite Product enables the detection of corrupted data in a computer image.
>
> 69.  On information and belief, the Hitachi Command Suite Product enables the verification of the integrity of software images.

(*Id.* at ¶¶ 35-36, 43, 53-54, 64, 66-69 (emphasis added); *see also id.* at ¶¶ 85-90, 95, 100-102, 104 ['504 Patent]).

5

### E.    The FAC Continues to Lack Pleaded Facts for Direct Infringement

The allegations of the FAC regarding Plaintiff's allegations of *direct* infringement merely parrot the language of exemplary claims in a conclusory manner followed by a general allegation of direct infringement – just as did the original Complaint.  Many of these allegations are completely bereft of any facts supporting any actual infringement by any specific Hitachi entity. Other allegations cite, with little explanation, materials that allegedly relate to the accused products and purportedly support Plaintiff's allegations.  These materials, often in the form of screenshots, are nothing but a mask to try and hide the glaring deficiencies of the FAC relative to the specific elements of the asserted claims.

Plaintiff fails to plead any facts even suggesting infringement of the core concept to which Plaintiff's allegations as to the claims of the '006 and '504 Patents are directed: systems and methods that generate digital signatures from executable images where the generation of the digital signatures excludes "pointers" or "locations" in the executable images that are "in need of fixing up by a program loader" or are "being modified by a program loader" or have "been bound to a selected address in the memory by a program loader."  There are no facts in the FAC regarding any pointers or locations that are in need of fixing up by a program loader or that are being modified by a program loader or that have been bound to a selected address in memory by a program loader.

For example, with respect to the '006 Patent, Plaintiff alleges as follows regarding the Hitachi Content Platform:

> 37.  On information and belief, the Hitachi Content Platform is a system wherein an executable image has one or more pointers needed for fixing up by a program loader. Specifically, the Hitachi Content Platform "includes many features specifically designed to protect the integrity and ensure the security of stored data."  How to Manage Unstructured Data with the Hitachi Content Platform at 17-18 (April 2012).

> 43.  On information and belief, the Hitachi Content Platform includes the ability to store "appendable objects," "access control lists," and "metadata" with fixed-content data.

44.   On information and belief, Hitachi documentation for the Hitachi Content Platform states, "if the primary metadata is missing a pointer to a copy of the object data, the service reconstructs the pointer."   HITACHI CONTENT PLATFORM ADMINISTERING HCP at 350 (2015).  Moreover, an access control list which is a "set of grants of permissions to preform various operations on the object" are configured to function as a pointer that references either a point in the executable image or reference a location in the memory of the system for managing access control to the executable image.  Hitachi Content Platform Administering HCP at 3 (2015).

45.   On information and belief, the below image from Hitachi's documentation of the Hitachi Content Platform shows the executable image (e.g., Object Container Structure) that is stored in the system and is comprised of the "fixed content data" and metadata and access control list.



48.   On information and belief, the Hitachi Content Platform comprises a system that contains a validator capable of generating at a first point in time a reference digital signature based upon a selected content of the executable image excluding each of the pointers.  Specifically, the Hitachi Content Platform generates a reference digital signature when an object is ingested into the system.  The reference digital signature is based on the "fixed content data" and thus excludes the each of the pointers which would be contained in the Object ACL, Appended Object Data or Metadata that is part of the executable image ("HCP Object").

(*Id.* at ¶¶ 37, 43-45, 48 (emphasis to "on information and belief" added)).

With respect to the '006 Patent, Plaintiff alleges as follows regarding the Hitachi Command Suite:

52. ... On information and belief, the Hitachi Command Suite comprises a system that determines the authenticity of an executable image.  Specifically, the Hitachi Command Suite Application Agent functionality enables a computer system to

execute an executable image such as an Exchange Database, File System, Drive Image, SQL Server Database, etc. *See* HITACHI REPLICATION MANGER APPLICATION AGENT CLI USER GUIDE at 1-2 (2016) ("Application Agent internally manages the relationships between the objects to be backed up and their associated logical units among the RAID devices, the relationships between the primary and secondary volumes, and the backup history.  This information is contained in dictionary map files.").

55.   On information and belief, the Hitachi Command Suite Product enables identifying one or more locations within the executable image, each of the identified locations being modified by a program loader.  The Hitachi Command Suite product contains functionality for managing an executable image wherein the executable image contains "one or more pointers."  These pointers include identification of the appropriate data and/or code for mount point directories, primary and secondary disk volumes, referenced files, etc. *See* HITACHI REPLICATION MANGER APPLICATION AGENT CLI USER GUIDE at 1-4 (2016) ("relationships between mount point directories for file systems and disk numbers across RAID devices.").

56.   On information and belief, the Hitachi Command Suite Product identifies the pointers that are in need of "fixing-up" in the dictionary map files.  Hitachi's documentation states, "Application Agent can detect a variety of configuration definitions required for backup or restore operations, such as information about file systems and databases, and disk management information about RAID devices. Application Agent uses this information and creates a series of files called the dictionary map files."  HITACHI REPLICATION MANGER APPLICATION AGENT CLI USER GUIDE at 1-4 (2016).

57. On information and belief, the below figure from Hitachi's documentation of the Hitachi Command Suite Product shows the dictionary map file that is used to fix up the pointers that are in the primary volume.



59.  <u>On information and belief</u>, the Hitachi Command Suite Product generates a reference digital signature that excludes one or more locations in an executable image.  This is because the "checksum" that compares the "hash" signatures is conducted after the image data is unmounted.  The below excerpt from Hitachi's documentation shows that the system checks the "ID" of the executable image that is being restored.

(*Id.* at ¶¶ 52, 55-57, 59 (emphasis to "on information and belief" added)).

With respect to the '504 Patent, Plaintiff's allegations regarding the Hitachi Command Suite are similar to Plaintiff's allegations with respect to the '006 Patent.  (*Id.,* ¶¶ 91-93, 96, 98).

The relevant portions of exemplary Claim 1 of the '006 Patent and Claim 1 of the '504 Patent state (emphasis added):

1. A system for determining the authenticity of an executable image, the system comprising:

an executable image having one or more **pointers** that are **in need of fixing up by a program loader**; and

a validator capable of generating at a first point in time a reference digital signature based upon a selected content of the executable image **excluding each of the pointers**, wherein the validator generates an authenticity digital signature at a second point in time based upon the selected content of the executable image **excluding each of the pointers**, and wherein the validator determines whether the reference digital signature matches the authenticity digital signature.

9

1.  A system configured to determine the authenticity of an executable image, the system comprising:

a computer configured to execute an executable image **having one or more pointers in need of fixing-up by a program loader**, wherein the executable image includes information specifying whether each of the pointers references a location that is within the executable image; and

a validator configured to generate a reference digital signature prior to loading the executable image into memory and an authenticity digital signature after loading the executable image into memory, both the reference digital signature and the authenticity digital signature **excluding the one or more pointers in need of fixing-up**, wherein the validator is configured to compare the reference digital signature and the authenticity digital signature to perform an authenticity check, and wherein the validator is configured to determine whether each of the pointers references a correct location that is within the executable image after each of the pointers has been bound.

None of the materials and screenshots that Plaintiff cites support Plaintiff's conclusory allegations as they do not show anything generating a digital signature from an executable image where the generation excludes pointers or locations that are "in need of fixing up by a program loader" or are "being modified by a program loader" or have "been bound to a selected address in the memory by a program loader."  (Dkt. 18 at ¶¶ 48-51, 59-65, 97-101).  Most of the allegations are based on "on information and belief" allegations and are either totally unsupported (*e.g.*, *id.* at ¶¶ 43, 48, 64, 66-70 ['006 Patent], ¶¶ 85-90, 95, 100-102, 104 ['504 Patent]) or are based on materials having little relevance to the accused products (*e.g.*, *id.* at ¶¶ 37-42, 44-47, 49-52, 55-63, 65 ['006 Patent], ¶¶ 91-94, 96-99, 103 ['504 Patent]).  A product that lacks these core elements of all claims of the '006 Patent and '504 Patent cannot infringe and the FAC's lack of legitimate allegations regarding them is fatal to the plausibility of Plaintiff's claims.[5]

---

[5]  Furthermore, and, as noted above, despite accusing both HDS and HL of a myriad of infringing acts including by use of "and/or" group pleading, the FAC is unclear which Hitachi entity's allegedly infringing act is implicated in its cursory discussion of such limitations.  As such, the FAC lacks the required factual detail that would put the Hitachi entities on notice of the specific charges of infringement against each of them.

## F.  The FAC Continues to Lack Pleaded Facts for Indirect Infringement

The FAC also alleges *indirect* infringement of the patents.  Like Plaintiff's claims of direct infringement, Plaintiff's indirect infringement allegations are vague generalities and wholly qualified with "on information and belief."  For example, the indirect allegations of the '006 Patent in the FAC are as follows:

> 72.  <u>On information and belief</u>, HDS and/or HL also indirectly infringe the '006 patent by actively inducing infringement under 35 USC § 271(b).

> 73.  <u>On information and belief</u>, HDS and/or HL had knowledge of the '006 patent since at least service of the first Complaint in this action or shortly thereafter, and on information and belief, HDS and/or HL knew of the '006 patent and knew of its infringement, including by way of this lawsuit.

> 74.  <u>On information and belief</u>, HDS and/or HL intended to induce patent infringement by third-party customers and users of the Hitachi '006 Products and had knowledge that the inducing acts would cause infringement or was willfully blind to the possibility that its inducing acts would cause infringement.  HDS and/or HL specifically intended and were aware that the normal and customary use of the accused products would infringe the '006 patent.  HDS and/or HL performed the acts that constitute induced infringement, and would induce actual infringement, with knowledge of the '006 patent and with the knowledge that the induced acts would constitute infringement.

> 75.  HDS and/or HL provides the Hitachi '006 Products that have the capability of operating in a manner that infringe one or more of the claims of the '006 patent, including at least claims 1, 3, 14, and 15, and HDS and/or HL further provides documentation and training materials that cause customers and end users of the Hitachi Content Platform[6] and Hitachi Command Suite[7] to utilize the products in a manner that directly infringe one or more claims of the '006 patent. See, e.g. ¶¶ 30, 32.  By providing instruction and training to customers and end-users on how to use the Hitachi '006 Products in a manner that directly infringes one or more claims of the '006 patent, including at least claims 1, 3, 14, and 15, HDS and/or HL specifically intended to induce infringement of the '006 patent.  On information and

---

[6] The FAC, in footnote 12, cites to various documents as part of its indirect infringement allegations.  (Dkt. 18 at ¶ 75, fn. 12).  The FAC contains no explanation or description of these materials or how they relate to the infringement allegations, the required elements of indirect infringement, or accused products.

[7] The FAC, in footnote 13, cites to various documents as part of its indirect infringement allegations.  (Dkt. 18 at ¶ 75, fn. 13).  The FAC contains no explanation or description of these materials or how they relate to the infringement allegations, the required elements of indirect infringement, or accused products.

> belief, HDS and/or HL engaged in such inducement to promote the sales of the Hitachi '006 Products, e.g., through user manuals, product support, marketing materials, and training materials to actively induce the users of the accused products to infringe the '006 patent. *See, e.g.* ¶¶ 30, 32.  Accordingly, HDS and/or HL has induced and continues to induce users of the accused products to use the accused products in their ordinary and customary way to infringe the '006 patent, knowing that such use constitutes infringement of the '006 patent.

(*Id.* at ¶¶ 72-75 (emphasis added)).   These allegations merely make conclusory statements regarding the required legal elements of induced infringement and contain minimal factual substance with respect to any specific instances of any Hitachi entity's allegedly offending conduct.  Plaintiff's indirect infringement allegations as to the claims of the '504 Patent take the same tack.  (*Id.* at ¶¶ 106-108).

In sum, other than bare citations in footnotes to a handful of documents, the FAC is completely devoid of any substantive facts regarding Defendants' alleged indirect infringement as evidenced by the universal use of "on information and belief."  Thus, the FAC does not plausibly state a claim of indirect infringement and should be dismissed.

## III.   DISMISSAL IS APPROPRIATE

### A.   Dismissal Under Fed. R. Civ. P. 12(b)(2) Is Required

#### 1.   The Federal Circuit Standards for Personal Jurisdiction

The present case involves claims of patent infringement, so Federal Circuit Law is applied to the issue of personal jurisdiction "because the jurisdictional issue is intimately involved with the substance of the patent laws."  *Xilinx, Inc. v. Papst Licensing GmbH & Co, KG*, 848 F.3d 1346, 1352 (Fed. Cir. 2017) (citing *Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*, 566 F.3d 1012, 1016 (Fed. Cir. 2009) (quoting *Avocent Huntsville Corp. v. Aten Int'l Co.*, 552 F.3d 1324, 1328 (Fed. Cir. 2008))).   *See generally, Godo Kaisha IP Bridge 1 v. Broadcom Limited, et al.*, No. 16-134, 2017 U.S. Dist. LEXIS 45416 (E.D. Tex. March 1, 2017).

Where, as here, the long-arm statute of Texas is coextensive with the limits of due process, determining whether jurisdiction exists over an out-of-state defendant reduces to the issue of "whether jurisdiction comports with due process."  *Inamed Corp. v. Kuzmak*, 249 F.3d

1356, 1360 (Fed. Cir. 2001). The U.S. Supreme Court has stated that the due process analysis focuses on the number and nature of a defendant's contacts with the forum to determine if the defendant has sufficient "minimum contacts" such "that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 326, 66 S. Ct. 154, 90 L. Ed. 95 (1945). Minimum contacts can be analyzed with respect to general jurisdiction or specific jurisdiction. *Daimler AG v. Bauman*, et al., 134 S. Ct. 746, 761, 187 L. Ed. 2d 624 (2014).

General jurisdiction applies to a defendant in "instances in which the continuous corporate operations within a state [are] so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 917, 131 S. Ct. 2846, 180 L. Ed. 2d 796 (2011) (quoting *Int'l Shoe*, 326 U.S. at 318); *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414, n.4, 104 S. Ct. 1868, 80 L. Ed. 2d 404 (1984). Thus, general jurisdiction applies in "only a limited set of affiliations with a forum [that] will render a defendant amenable to all-purpose jurisdiction there." *Daimler*, 134 S. Ct at 760. The Fifth Circuit has also stated that it is "incredibly difficult to establish general jurisdiction in a forum other than the place of incorporation or principal place of business" of a defendant. *Monkton Ins. Services, Ltd. v. Ritter*, 768 F.3d 429, 432 (5th Cir. 2014).

Specific jurisdiction applies to a defendant when the factual basis for a complaint arises out of or relates to the forum and creates a substantial connection with the forum. *Asahi Metal Indus. Co. v. Super. Ct. of Cal.*, 480 U.S. 102, 112-13, 107 S. Ct. 1026, 94 L. Ed. 2d 92 (1987). In the case of specific jurisdiction, the U.S. Supreme Court's due process jurisprudence is summarized in a three-factor test: "(1) whether the defendant 'purposefully directed' its activities at residents of the forum; (2) whether the claim 'arises out of or relates to' the defendant's activities with the forum; and (3) whether assertion of personal jurisdiction is 'reasonable and

fair.'" *Inamed*, 249 F.3d at 1360.  *See also NexLearn v. Allen Interactions, Inc.*, -- F.3d --, 2017 U.S. App. LEXIS 10735, \*7-\*8 (Fed. Cir. June 19, 2017).[8]  "The first two factors correspond with the 'minimum contacts' prong of the [*International Shoe Co. v. Washington*, 326 U.S. 310, 66 S. Ct. 154, 90 L. Ed. 95 (1945)] analysis, and the third factor corresponds with the 'fair play and substantial justice' prong of the analysis."  *Inamed*, 249 F.3d at 1360; *Xilinx*, 848 F.3d at 1353.  To satisfy the due process standard for specific jurisdiction, defendants must also have "fair warning that a particular activity may subject [them] to the jurisdiction of a foreign sovereign."  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985).  In other words, defendants' "conduct and connection with the forum State" must be "such that [they] should reasonably anticipate being haled into court there."  *Id*. at 474.

## 2.     There Is No General Jurisdiction Over HL

The Court does not have general jurisdiction over HL.  As noted, the FAC provides nothing of substance to establish general or specific jurisdiction.  As described, the FAC alleges that HL is a Japanese company located in Japan with subsidiaries (Dkt. 18 at ¶ 10), and that its subsidiaries have asserted patents in the District (*id*. at ¶ 11).  The FAC then asserts that "Hitachi has committed acts within the Eastern District of Texas giving rise to this action and has established minimum contacts with this forum such that the exercise of jurisdiction over Hitachi would not offend traditional notions of fair play and substantial justice."  (*Id*. at ¶ 13).  That "Hitachi" however, is *not* limited to HL. Such broad-based allegations do not comport with any

---

[8]  *NexLearn* rejected an assertion of specific jurisdiction based on a defendant's "emails, presentations, and advertisements predating August 5, 2014 cannot constitute infringing acts giving rise to NexLearn's claim because they did not occur 'during the term of the patent."  Likewise, the decision rejected defendant's website as a basis for specific jurisdiction, stating "Allen's inclusion of Kansas in its dropdown of all states on its website is not enough to subject Allen to jurisdiction in Kansas. Allen's address selector may indicate its amenability to selling ZebraZapps to Kansas residents, but it does not establish minimum contacts arising out of or related to the infringement claim. While a Kansas resident could purchase ZebraZapps from Allen's website, what is missing is any evidence that such a sale has taken place." *Id*., 2017 U.S. App. LEXIS 10735 at \*13.  Post patent-issuance mass email advertisements about the accused products and single offer to try the product at issue likewise did not create specific jurisdiction. *Id.,* 2017 U.S. App. LEXIS 10735 at \*18-\*19.

notion of showing "continuous corporate operations within a state [are] so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities." *Goodyear Dunlop Tires Operations*, 564 U.S. at 917.

The Sudo Declaration describes the absence of Texas contacts by HL. HL: (1) is not incorporated or headquartered in Texas, and does not have a principal place of business in Texas; (2) does not have any offices or other business or physical presence in Texas; (3) has no telephone numbers or mailing addresses in Texas; (4) does not own, lease, or possess any real property in Texas; (5) is not registered to do business anywhere in Texas and does not have an agent for service of process in Texas; (6) has no employees in Texas; and (7) has no continuous and systematic contacts with Texas as to render the corporation "at home" in the State of Texas. (Sudo Dec. at ¶¶ 2-8). Similarly, HL does not make, use, sell, or offer to sell in Texas, or anywhere else in the United States, any of the products accused of infringement in the FAC, namely (a) the "Hitachi Command Suite Product" (Dkt. 18 at ¶ 29); (b) the "Hitachi Content Platform" (*id*. at ¶ 30); (c) the "Hitachi '504 Products" (*id*. at ¶ 81); and (d) the "Hitachi '114 Products" (*id*. at ¶ 114). In addition, HL has no involvement with third-party customers for these products relative to their purchase of or use of such products. (Sudo Dec. at ¶¶ 9-10).

General jurisdiction cannot exist under such circumstances. As discussed *supra*, general jurisdiction applies in "only a limited set of affiliations with a forum," *Daimler*, 134 S. Ct at 760, and in this Circuit, it is "incredibly difficult to establish general jurisdiction in a forum other than the place of incorporation or principal place of business" of a defendant. *Monkton Ins. Services*, 768 F.3d at 432. Plaintiff's allegations do not meet that "incredibly difficult" burden and HL's showing shows that the burden cannot be met.

### 3. There Is No Specific Jurisdiction Over HL

The facts in the Sudo Declaration also establish lack of specific jurisdiction. As described *supra*, Mr. Sudo states that HL does not make, use, sell, or offer to sell in Texas, or anywhere else in the United States, any of the products accused of infringement in the FAC and has no involvement with third-party customers for these products relative to their purchase of or

15

use of such products. (Sudo Dec. at ¶¶ 9-10).

Mr. Sudo also addresses HL's Internet activities, stating that HL "conducts no business over the Internet with persons in Texas in terms of offering products or services to the residents of Texas or by maintaining any customer support portal." (*Id.* at ¶ 11). HL's website www.hitachi.com makes clear to customers and potential customers that the company responsible for the Hitachi Command Suite at issue in this action is Hitachi Data Systems Corporation ("HDS") and also how the company responsible for the Hitachi ID Identity and Access Management Suite at issue in this case is Hitachi ID Systems, Inc. ("HIDS"). (*Id.* at ¶ 12-13). HDS and HIDS maintain their own separate websites.

Mr. Sudo confirms that HL: (a) has not has purposefully directed any activities at residents of Texas; and (b) is not responsible for any infringement by others that occurs in Texas. (*Id.* at ¶¶ 15-16). Mr. Sudo concludes that in view of the lack of any significant contacts with Texas, it would be unfair to HL to require it to defend this action in this District. (*Id.* at ¶ 17).

The Sudo declaration demonstrates that the three-part *Inamed* test for specific jurisdiction cannot be met. Indeed, HL has not "purposefully directed its activities at residents of" Texas. The patent infringement claims do not "arise[] out of or relate[] to" any HL activities with the forum. The assertion of personal jurisdiction would be neither "reasonable" nor "fair."

Even the HL website is of a kind that is simply a "passive website" where HL "has simply posted information that customers can access," which is not the kind of website that can be used to establish specific jurisdiction. *See Loyalty Conversion Sys. Corp. v. American Airlines, Inc. et al.*, 66 F. Supp. 3d 813, 826 (E.D. Tex. 2014), citing *Maynard v. Phila. Cervical Collar Co.*, 18 F. App'x 814, 816-17 (Fed. Cir. 2001) ("A passive website is insufficient to establish purposeful availment for the purpose of due process."). Importantly, and unlike the Broadcom website that was sufficient to establish specific jurisdiction in *Godo Kaisha IP Bridge*, the HL website is not one in which HL "identifie[s] and advertise[s] [itself] interchangeably" with the websites of its subsidiaries. Likewise, the website contains no "technical support submission forms, client support portals, marketing videos, downloadable product, selection

16

guides and whitepapers containing information, about the accused products, [or] interactive maps, allowing customers to find and buy Defendants products." *Godo Kaisha IP Bridge,* 2017 U.S. Dist. LEXIS 45416 at \*22.

The recent NexLearn decision also confirms the irrelevance of the HL website for specific jurisdiction purposes.  As the decision states, *id*. at 2017 U.S. App. LEXIS 10735, \*12-\*13:

> We evaluate Allen's website as we would any other contact under a specific jurisdiction theory; for there to be minimum contacts, there must be evidence that Allen purposefully availed itself of Kansas and that NexLearn's claim arises out of or relates to those contacts. The existence of Allen's website, without more, is insufficient to show that Allen has minimum contacts with Kansas. *Cf. Nuance Commc'ns, Inc. v. Abbyy Software House*, 626 F.3d 1222, 1235 (Fed. Cir. 2010) (holding "this court cannot determine that Abbyy Software purposefully availed itself of the privilege of conducting activities in California by some affirmative act or conduct, and that Nuance's claims arise out of those activities," although Abbyy Software maintained a website that "promotes the sale of [the infringing] products in California"); *Campbell Pet Co. v. Miale*, 542 F.3d 879, 884 (Fed. Cir. 2008) (not relying on defendant's website as a contact for specific jurisdiction and specifying in the general jurisdiction context, "maintenance of a website is also insufficient to give rise to general jurisdiction over the defendants in the State of Washington, as the website is not directed at customers in Washington and does not appear to have generated any sales in Washington"). We addressed whether a defendant's website gave rise to specific jurisdiction in *Trintec*, in which Trintec alleged Pedre was subject to specific jurisdiction in the District of Columbia based on "Pedre's use of its own interactive website to advertise its products, which Trintec alleges customers in the District of Columbia can use to purchase those products from Pedre." *Trintec Indus., Inc. v. Pedre Promotional Prods., Inc*., 395 F.3d 1275, 1281 (Fed. Cir. 2005). We explained the difficulty with that specific jurisdiction theory was that "Pedre's website is not directed at customers in the District of Columbia, but instead is available to all customers throughout the country." *Id*. Absent evidence that "any District residents have ever actually used Pedre's website to transact business," Trintec's allegations (together with other evidence of Pedre's contacts) were insufficient to show specific jurisdiction existed.  *Id*. at 1281-82.

Accordingly, the nature of the HL website is one where its use to establish specific jurisdiction would completely offend "traditional notions of fair play and substantial justice." *Int'l Shoe*, 326 U.S. at 316.

**B.      Dismissal Under Fed. R. Civ. P. 12(b)(6) is Required**

**1.      The Standards for Rule 12(b)(6)**

Under Fed. R. Civ. P. 12(b)(6) a complaint should be dismissed if the complaint "fail[s] to state a claim upon which relief can be granted."  In a patent case, a motion to dismiss for failure to state a claim is reviewed under the law of the regional circuit.  *In re Bill of Lading Transmission and Processing Sys. Patent Litig.*, 681 F.3d 1323, 1331 (Fed. Cir. 2012).  In the Fifth Circuit, dismissal is warranted under Rule 12(b)(6) if "the plaintiff has not alleged enough facts to state a claim to relief that is plausible on its face or has failed to raise its right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Raj v. La. State Univ.*, 714 F.3d 322, 330 (5th Cir. 2013) (citing *Bass v. Stryker Corp.*, 669 F.3d 501, 506 (5th Cir. 2012)).

To state a claim for relief that is facially plausible, a plaintiff must plead factual content that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 686 (2009)).  "[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007) (internal quotations omitted).[9]

**a.      The Requirements For Pleading Direct Infringement**

It is significant that the December 2015 changes to the Federal Rules of Civil Procedure

---

[9]    In considering a Rule 12(b)(6) motion, the court may consider "the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint."  *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). However, "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. Moreover, "The Court need not accept as true conclusory allegations and allegations contradicted by other allegations within Plaintiff's own complaint."  *LBS Innovations, LLC v. Nokia USA Inc.*, No. 2:15-CV-1972-JRG, 2016 U.S. Dist. LEXIS 80303, at *6 (E.D. Tex. June 21, 2016) (citing *Rosas v. Bexar Cty.*, No. 5:14-CV-1082-DAE, 2015 WL 1955406, at *5 (W.D. Tex. Apr. 29, 2015)).

4821-7900-9354

abrogated the Form 18 bare-bones style patent complaint, which had long been used by plaintiffs in patent cases as a safe harbor to effectively immunize minimalist pleadings of direct patent infringement from motions to dismiss.  Plaintiffs in patent cases can no longer hide behind Form 18 when pleading infringement, but instead must now comply with the "plausibility" standard of *Iqbal* and *Twombly*.  *Ruby Sands LLC v. Am. Nat'l Bank of Tx.*, No. 2:15-CV-1955-JRG, 2016 U.S. Dist. LEXIS 83897, at *7-8 (E.D. Tex. June 28, 2016).

With respect to allegations of direct infringement, to meet the pleading requirements of the Federal Rules as interpreted by *Iqbal / Twombly*, "a plaintiff must explicitly plead facts to plausibly support the assertion that a defendant 'without authority makes, uses, offers to sell, or sells any patented invention during the term of the patent.'"  *Id*. at *8.  "Information and belief" pleading is impermissible.  For example, in *Nu-You*, the court dismissed a claim for direct infringement because it failed to plausibly allege that the defendant performed every step of the claimed method as is required of a claimed method.  *Nu-You Techs., LLC v. Beauty Town Int'l Inc.*, No. 3:15-CV-03433-N, 2016 U.S. Dist. LEXIS 125151, at *4-6 (N.D. Tex. July 7, 2016).  The court dismissed the claim for direct infringement even though the complaint alleged, upon "information and belief," facts to support its claims of infringement such as sales representatives of the defendant having performed each step of the claim.  *Id*.  The court reasoned that the complaint was nonetheless devoid of any facts to support the allegations, and refused to accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions."  *Id*. at *2 (quoting *Ferrer v. Chevron Corp*., 484 F.3d 776, 780 (5th Cir. 2007)).  Under that reasoning, patent infringement complaints that merely recite claim language, parrot claim language, or make allegations upon "information and belief" without stating facts that actually support the stated allegation are subject to dismissal.  *Id.*[10]

---

[10]  *See also Macronix Int'l Co., Ltd. v. Spansion Inc.*, 4 F. Supp. 3d 797, 804 (E.D. Va. 2014) (holding that a FAC that simply alleges that each element of a cited claim is infringed and then parrots the claim language for each element simply does not satisfy the notice and showing requirements of Rule 8(a) as interpreted by *Twombly* and *Iqbal*).

"Group pleading," whereby infringement claims are broadly made against multiple defendants, is also impermissible.[11]  This is particularly true where one or more of the defendants are foreign entities because pleadings made against multiple grouped defendants cannot properly allege that acts were performed in the United States by any one defendant since it is not apparent which activities are alleged to be performed by each defendant.[12]  *North Star Innovations, Inc. v. Toshiba Corp.*, No. 16-115-LPS-CJB, 2016 U.S. Dist. LEXIS 168670, at *3-6, *5 n.4 (D. Del. Dec. 6, 2016) (magistrate's recommendation) (explaining that the fact that one of the defendants was not a U.S.-based entity might affirmatively suggest that it had not done any of the actions alleged to have occurred in the United States where the allegation was made against a group of defendants together and, therefore, recommending to grant the motion to dismiss).  Likewise, where multiple products are involved, the claim must at least identify general categories of accused products or services of *each* defendant.  *Wistron Corp. v. Phillip M. Adams & Assocs., LLC*, No. 10-4458, 2011 U.S. Dist. LEXIS 102237, at *10-12 (N.D. Cal. Sept. 12, 2011).

### b.      The Requirements For Pleading Indirect Infringement

Regarding indirect infringement allegations, as explained above, Plaintiff alleges that subsets of the named Hitachi entities indirectly infringed each of the patents under 35 U.S.C. §

---

[11]  *See Automated Transaction LLC v. New York Cmty. Bank,* No. 12-cv-3070, 2013 WL 992423, at *4 (E.D.N.Y. Mar. 13, 2013) (dismissing patent infringement complaint because of improper "group pleading" that failed to properly "differentiate[] between Defendants");  *PLS-Pac. Laser Sys. v. TLZ Inc.*, No. 06-4585, 2007 U.S. Dist. LEXIS 53176, at *31-33 (N.D. Cal. July 9, 2007) (dismissing claims of direct infringement in a complaint due to impermissible group pleading).  As noted in *PLS-Pac. Laser,* "where allegations are made against multiple defendants, plaintiff must allege the basis of his claim against each defendant to satisfy Federal Rule of Civil Procedure 8(a)(2), which requires a short and plain statement of the claim to put defendants on sufficient notice of the allegations against them." *Id*. at *32-33.

[12]  A claim for infringement must be based on activities that occur within the United States because "[i]t is well-established that the reach of [35 U.S.C. § 271(a) is limited to infringing activities that occur within the United States."  *MEMC Electronic Materials, Inc. v. Mitsubishi Materials Silicon Corp.*, 420 F.3d 1369, 1375 (Fed. Cir. 2005); *see also Rotec Indus., Inc. v. Mitsubishi Corp.*, 215 F.3d 1246, 1251 (Fed. Cir. 2000) ("[T]he right conferred by a patent under our law is confined to the United States and its territories, and infringement of this right cannot be predicated of acts wholly done in a foreign country.") (internal quotations omitted).

271(b).  Under 35 U.S.C. § 271(b), "[w]hoever actively induces infringement of a patent shall be liable as an infringer."  As stated by this Court, "[i]n order to state a claim for induced infringement, the plaintiff must plausibly allege (1) that a third party, or the defendant in combination with a third party, has performed acts sufficient to constitute infringement; (2) that the defendant knew of the patent and that the acts in question would infringe; and (3) that the defendant had specific intent to encourage the third party's infringement." *Tierra Intelectual Borinquen, Inc. v. ASUS Computer Int'l, Inc.*, No. 2:13-CV-38-JRG, 2014 WL 894805, at *2 (E.D. Tex. Mar. 4, 2014).

Notably, the third element required above is "that the defendant had specific intent to encourage another's infringement."  This Court has explained that to sufficiently plead the required "specific intent," one must allege that the defendant took "affirmative steps to bring about the desired result … In the absence of such evidence, a defendant is not liable for induced infringement." *Tierra Intelectual*, 2014 WL 894805, at *4 (emphasis added) (citing *Global-Tech Appliances, Inc. v. SEB S.A.*, 131 S. Ct. 2060, 2065 (2011)).

With respect to its inducement allegations, a plaintiff must provide specifics and not mere "generalized allegations" that a defendant provided unspecified user manuals or marketing literature that would have caused infringement.[13]

### 2.     The Court Should Dismiss the FAC Under Fed. R. Civ. P. 12(b)(6)

#### a.     No Plausible Direct Infringement Claim Is Stated

Plaintiff's direct infringement allegations continue to be highly flawed and should be dismissed because Plaintiff has once again failed to plead facts that state a plausible claim for relief.  As discussed *supra*, the claims of '006 and '504 Patents are directed to the core concept

---

[13] *See, e.g., Affinity Labs of Tex., LLC v. Toyota Motor N. Am.*, No. W:13-CV-365, 2014 WL 2892285, at *7 (W.D. Tex. May 12, 2014) ("Plaintiff's generalized allegations that Toyota induced others to infringe the Asserted Patents through its marketing and sales tactics are likewise insufficient."); *MONEC Holding AG v. Motorola Mobility, Inc.*, 897 F. Supp. 2d 225, 234 (D. Del. 2012) ("Allegations of the marketing activities of the Defendants do not, on their own, demonstrate that Defendants knew such activities were infringing or that Defendants possessed the specific intent to encourage another's infringement.").

21

of generating digital signatures where the generation of the digital signatures excludes "pointers" or "locations" in the executable images that are "in need of fixing up by a program loader" or are "being modified by a program loader" or have "been bound to a selected address in the memory by a program loader."  None of Plaintiff's direct infringement allegations state facts showing a plausible claim for direct infringement of the patents because no facts are alleged that demonstrate use or implementation of this core concept.  In the absence of such pleaded facts, the direct allegation assertions fail.

As explained above, Plaintiff's allegations are either totally unsupported with actual facts (*e.g.*, Dkt. 18 at ¶¶ 35-36, 43, 48, 53-54, 64, 66-70 ['006 Patent], ¶¶ 85-90, 95, 100-102, 104 ['504 Patent]) or cite, with no explanation as to their relevance to the specific versions of the accused products, to materials that allegedly relate to the products accused of infringement (*e.g.*, *id*. at ¶¶ 37-42, 44-47, 49-52, 55-63, 65 ['006 Patent], ¶¶ 91-94, 96-99, 103 ['504 Patent]).  In either case, the "facts" alleged by Plaintiff as to the direct infringement claims are almost universally qualified by "on information and belief."  And as shown above, even allegations that cite materials purportedly related to the accused products do not support the substance of Plaintiff's allegations.

In particular, Plaintiff does not allege any facts to show the existence of "pointers" or "locations" that are "in need of fixing up by a program loader" or are "being modified by a program loader" or have "been bound to a selected address in the memory by a program loader." For that feature, Plaintiff merely restates the claim language, and then for each accused product merely cites a sentence from a document that does not support the substance of the allegation in any way.  (Dkt. 18 at ¶¶ 37, 55).[14]

---

[14]    As an example, with regard to the '006 Patent, the FAC states in ¶ 37 that "[o]n information and belief, the Hitachi Content Platform is a system wherein an executable image has one or more pointers needed for fixing up by a program loader." (*Id*. at ¶ 37).  That allegation is made upon "information and belief" and is just a conclusory restatement of the claim language, so it should not be accepted as true.  The FAC in ¶ 37 then cites to a document and states that "[s]pecifically, the Hitachi Content Platform 'includes many features specifically designed to protect the integrity and ensure the security of stored data.'  HOW TO MANAGE

Indeed, there are *no facts* pleaded in the FAC to indicate what would be considered a "program loader" or what would be the "pointers in need of fixing up by a program loader."  In ¶ 44 of the FAC, there is an allegation that metadata may be missing a pointer or that an access control list that is a set of grants of permissions to perform operations on an object may function as a pointer, but there is no allegation in that paragraph that any purported pointer in metadata or an access control list is "in need of fixing up by a program loader."  (*Id*. at ¶ 44).  The metadata and the access control list are not even alleged to be programs, so there is no allegation that a program loader ever even loads or handles metadata or an access control list.  (*Id*.)  As such, there are no facts pleaded with respect to the accused Hitachi Content Platform regarding the claimed feature of "one or more pointers that are in need of fixing up by a program loader."[15]

Similarly, the quote provided from the cited document in ¶ 55 of the FAC merely mentions "relationships between mount point directories for file systems and disk numbers across RAID devices."  (*Id*. at ¶ 55).  There is no mention of any pointers "being modified by a program loader" in that document citation.  There are no facts pleaded to indicate that mount

---

UNSTRUCTURED DATA WITH THE HITACHI CONTENT PLATFORM at 17-18 (April 2012)."  (*Id*.)  That citation to a document does not support at all the substance of the allegation made in the previous sentence in that paragraph because it does not mention any pointers in need of fixing up by a program loader.  The allegation, therefore, should not be accepted as true.

[15]   Similarly, with respect to the accused Hitachi Command Suite, Plaintiff does not allege any facts to show the existence of "pointers" or "locations" that are "in need of fixing up by a program loader" or are "being modified by a program loader" or have "been bound to a selected address in the memory by a program loader."  The FAC states in ¶ 55 that "[o]n information and belief, the Hitachi Command Suite Product enables identifying one or more locations within the executable image, each of the identified locations being modified by a program loader."  (*Id*. at ¶ 55).  That allegation is made upon "information and belief" and is just a conclusory restatement of the claim language, so it should not be accepted as true.  The FAC in ¶ 55 then states that "[t]he Hitachi Command Suite product contains functionality for managing an executable image wherein the executable image contains 'one or more pointers'" and that "[t]hese pointers include identification of the appropriate data and/or code for mount point directories, primary and secondary disk volumes, referenced files, etc. *See* Hitachi Replication Manger Application Agent CLI User Guide at 1-4 (2016) ('relationships between mount point directories for file systems and disk numbers across RAID devices.')."  (*Id*.)  That citation to a document does not support at all the substance of the allegations made in the paragraph because it does not mention any pointers "being modified by a program loader."  The allegation, therefore, should not be accepted as true.

23

point directories are modified in any way by a program loader or even what would be considered the program loader.  (*Id*.)

The FAC goes on to state in ¶ 56 that "[o]n information and belief, the Hitachi Command Suite Product identifies the pointers that are in need of 'fixing-up' in the dictionary map files." (*Id*. at ¶ 56).  Again, this is just a conclusory statement that should not be accepted as true.  As purported support for that statement, the FAC remarks that "Hitachi's documentation states, 'Application Agent can detect a variety of configuration definitions required for backup or restore operations, such as information about file systems and databases, and disk management information about RAID devices.  Application Agent uses this information and creates a series of files called the dictionary map files.'  HITACHI REPLICATION MANGER APPLICATION AGENT CLI USER GUIDE at 1-4 (2016)."  (*Id*. at ¶ 56).  That citation, however, does not provide any support for the allegation because it *does not mention any pointers that are in need of fixing up*, and certainly says nothing about any pointers in need of fixing up by a program loader.[16]

Just as in *Nu-You*, where the court dismissed the claim for direct infringement even though the complaint alleged facts upon "information and belief" that sales representatives of the defendant had performed each step of the claim, the FAC in this action, likewise made "upon information and belief" should be dismissed.[17]  Without these "facts," Plaintiff's direct infringement allegations fall well short of the specificity required by *Iqbal / Twombly* and should be dismissed.

---

[16]  The image referred to and shown below paragraph 57 of the FAC similarly provides no support for the allegation of pointers in need of fixing up by a program loader because the image does not even mention any pointers or any program loader.  (*Id*. at ¶ 57).  The allegations for the '504 Patent have the same deficiencies.  (*Id*. at ¶¶ 91-93).

[17]  *See Nu-You Techs*., 2016 U.S. Dist. LEXIS 125151, at *4-6.  As explained by the court in *Nu-You*, the complaint made upon "information and belief" was devoid of any actual facts to support the allegations, and the court there refused to accept as true conclusory allegations that merely repeated the claim language.  *Id*.  Similarly, the allegations made upon "information and belief" here either lack any asserted actual basis or cite to purportedly relevant materials that do not support the stated allegations.  Such conclusory allegations should not be accepted as true.

Plaintiff's lack of detail regarding the accused entities' respective roles in the acts causing the alleged infringement only exacerbates the pleading defects.[18]  The FAC is simply woefully deficient regarding which named Hitachi entity is responsible for which infringing acts with respect to each accused product.  As noted, such improper "group pleading" "fails to give each defendant fair notice of the claims against it."[19]  *Automated Transaction*, 2013 WL 992423, at *4.

Also, just as in *North Star*, the improper group pleading makes it impossible for the Court to assure itself that there is an allegation that *each* defendant has committed acts in the United States.  *See North Star*, 2016 U.S. Dist. LEXIS 168670, at *3-5.  In ¶¶ 13, 28, 70-76, 78, 80, 104-109, and 111 of the FAC, allegations are made in a group pleading manner against HL and one or more other defendants.  The FAC recognizes in ¶ 10, however, that HL is a Japanese company with its principal place of business located in Japan.  Just as in *North Star* where the fact that a defendant was not a U.S.-based entity made the group pleading allegations particularly inappropriate when they alleged activities in the United States, the group pleading allegations against HL in the present case are insufficient to properly allege any actions by HL in the United States.  *See North Star*, 2016 U.S. Dist. LEXIS 168670, at *5 n.4.  Moreover, the allegations in ¶¶ 34 and 84 of the FAC do not allege that any of the actions were performed by HL in the United States.  Indeed, the declaration by Mr. Sudo confirms that HL does not make, use, sell, or offer to sell in Texas, or anywhere else in the United States, any of the products accused of

---

[18]   Specifically, as explained above, using "and/or" group pleading, Plaintiff accuses subsets of the four named Hitachi entities of the acts of infringement even though they comprise four separate corporate entities.  The FAC is generally silent as to which allegedly infringing acts and products may be attributed to which Hitachi entity.  (*See* Dkt. No. 18 at ¶¶ 28, 70-75 ['006 Patent], ¶¶ 80, 104-108 ['504 Patent]).  The FAC also vaguely asserts, "on information and belief," that some unidentified "Hitachi subsidiaries and/or affiliates" "use the [accused products] in regular business operations."  (*Id.* at ¶ 35 ['006 Patent], ¶ 85 ['504 Patent]).

[19] Also, although unclear, to the extent Plaintiff is asserting theories of joint infringement, the Complaint is wholly insufficient of the detail regarding that theory.  *LBS Innovations, LLC,* 2016 U.S. Dist. LEXIS 80303, at *10 (dismissing complaint predicated on joint infringement where the complaint did not adequately plead the acts and entities responsible for the joint enterprise).

infringement in the FAC and has no involvement with third-party customers relative to their purchase of or use of such products.  (Sudo Dec. at ¶¶ 9-10).  It is therefore impossible for Plaintiff to allege direct infringement by HL, and Plaintiff should not be able to get around that problem through the use of group pleading.  Plaintiff's claims of direct infringement do not allow any Hitachi entity or "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" and should be dismissed.  *Iqbal*, 556 U.S. at 686.

### b.      No Plausible Indirect Infringement Claim Is Stated

Plaintiff's indirect infringement allegations remain similarly flawed and should be dismissed because Plaintiff has failed to plead facts to state a plausible claim that any Hitachi entity has induced infringement of anyone else.  Indeed, after two attempts, it is plain that Plaintiff is incapable of making a proper pleading.  Namely, Plaintiff's allegations with regard to specific intent and affirmative steps – contained in paragraphs 74-75 and 108 – are nothing but a conclusory recitation of the legal elements of indirect infringement except for bare citation to a handful of materials with no explanation as to their relevance.  (Dkt. 18 at ¶¶ 74-75, 108).

Plaintiff's allegations have two purported bases for specific intent.  Plaintiff first contends that Defendants had the necessary specific intent because they were allegedly "aware that the normal and customary use of the accused product would infringe the [asserted patents]." (*Id*. at ¶¶ 74, 108).  However, this Court has already held that such allegations are not adequate because "[i]n order to be sufficient for a finding of specific intent … the evidence must prove something more than the defendant's knowledge that its products may be used for infringement." *Tierra Intelectual*, 2014 WL 894805, at *4.

Plaintiff's other approach is to point to, with no explanation, a handful of documents that allegedly provide "documentation and training materials that cause customers and end users … to utilize the products in a manner that directly infringe one or more claims of [the asserted patents]." (Dkt. 18 at ¶¶ 75, 108).  These materials are not provided with the FAC and are simply identified in footnotes with no explanation of their specific relevance to Defendants' specific intent.  (*Id.*)  More generally, Plaintiff points to vague and generic categories of

documents allegedly supplied by Defendants to end users — "instruction and training," "user manuals," "product support," and "marketing materials." (*Id.*)  This Court and others have repeatedly held that reference to such vague and generic materials does not suffice at the pleading stage.[20]

The only evidence the FAC cites in support of its indirect infringement allegations is a handful of materials that purportedly relate to the accused products.  These materials are not provided with the FAC and their specific relevance is never explained by Plaintiff.  Further, Plaintiff's FAC pleads that a collection of Hitachi defendants – grouped using "and/or" – performed the actions complained of including collectively providing these unspecified materials.  (*Id.* at ¶¶ 74-75 "HDS and/or HL" ['006 Patent], 108 "HDS and/or HL" ['504 Patent]).  Such group pleading is improper as it does not put any of the entities on specific notice of their actions giving rise to infringement.  *Cf., e.g., Automated Transaction LLC*, 2013 WL 992423, at *4 (dismissing patent infringement complaint that did not properly differentiate actions between defendants).  Such group pleading is also insufficient to properly allege any actions by any defendant in the United States, or even whether an action was performed by a particular defendant at all.  *See North Star*, 2016 U.S. Dist. LEXIS 168670, at *3-5, *5 n.4.  In the present case, Mr. Sudo has stated that HL does not make, use, sell, or offer to sell in Texas, or anywhere else in the United States, any of the products accused of infringement in the FAC and has no involvement with third-party customers relative to their purchase of or use of such products.  (Sudo Dec. at ¶¶ 9-10).  It is therefore impossible for Plaintiff to allege actions for induced infringement by HL, and Plaintiff should not be able to get around that problem through the use of group pleading.  As such, the FAC's indirect infringement allegations fall well short of

---

[20]  *See, e.g., Tierra Intelectual*, 2014 WL 894805, at *3 ("vague allegations that [a] User Guide instructs infringement are not sufficient by themselves" to plead induced infringement); *Core Wireless Licensing S.A.R.L v. Apple Inc.*, No. 6:14-cv-752-JRG-JDL, 2015 WL 4910427, at *4 (E.D. Tex. Aug. 14, 2015) ("[G]eneric allegations that an alleged infringer provides instructional materials along with the accused products, without more, are insufficient to create a reasonable inference of specific intent for the purposes of an induced infringement claim.").

what is required by Rule 8 and fail to state a claim.

### c.      The FAC Should Be Dismissed With Prejudice

The FAC should be dismissed because Plaintiff has now *twice* deficiently pled its claims of infringement.  Plaintiff's approach to pleading infringement in this case, which has been mirrored in other cases filed by Plaintiff,[21] simply fails, after two attempts, to state plausible claims for relief.[22]  The pleading of Plaintiff that is made almost entirely on "information and belief" – and clearly without a proper Rule 11 investigation – demonstrates that Plaintiff is not capable of crafting a plausible infringement theory, and "Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."  *Iqbal*, 556 U.S. at 678-79.

Plaintiff is permitted to amend its Complaint as a matter of right *once* under Fed. R. Civ. P. 15(a)(1).  Plaintiff has exercised that right and, as explained herein, the FAC does not correct the fundamental problems with Plaintiff's allegations.  In a situation such as this, where the Plaintiff has now *twice* filed inadequate Complaints for patent infringement under *Iqbal/Twombly*, dismissal *with prejudice* is appropriate.  *See Ruby Sands*, 2016 U.S. Dist. LEXIS 83897, at *15 (dismissing patent infringement complaint *with prejudice* where plaintiff repeatedly filed implausible patent infringement claims).  It is apparent that any further amendment would thus be futile and should be denied.  *See  Foman v. Davis*, 371 U.S. 178, 182 (U.S. 1962) (confirming propriety of denial of leave to amend where there has been failure to

---

[21] Plaintiff's deficient pleading here is by no means unique as Plaintiff has filed a host of infringement actions – 17 different lawsuits – against a number of different defendant groups.  A sampling of just a few of these cases indicates that the Complaints in those cases contain very similar conclusory language as the Complaint in the present case.  (*See, e.g.*, Case No. 2:16-cv-01056 (Symantec), Dkt. No. 1 at ¶ 121).  Such boilerplate pleading, and the wholesale disregard of a proper Rule 11 pre-filing investigation that it represents, should be dismissed at the Rule 12(b)(6) stage just as this Court and others have repeatedly done in the past. *See, e.g. Ruby Sands*, 2016 U.S. Dist. LEXIS 83897, at *14 (criticizing "the kind of cut-and-paste pleading practices that Rule 12(b)(6) was meant to address"); *Affinity Labs*, 2014 WL 2892285, at *7.

[22] *See Iqbal*, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."); *Twombly*, 550 U.S. at 555 ("a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do (citation omitted).").

cure deficiencies by amendments previously allowed and where such amendments would be futil[e]"); *Jones v. Nueces County*, 2012 U.S. Dist. LEXIS 115006, *12 (S.D. Tex. Aug. 15, 2012) (denying leave to amend as futile under *Foman*, where such amendment would not present a plausible claim under *Iqbal*.)

## IV.     CONCLUSION

For each and all of the foregoing reasons, HL respectfully requests that this Motion be granted and Plaintiff's Complaint against it be dismissed with prejudice.

4821-7900-9354

Respectfully submitted,

Dated: June 28, 2017

*/s/  William J. Robinson*
William J. Robinson (**LEAD ATTORNEY**)
Justin M. Sobaje
**FOLEY & LARDNER LLP**
555 South Flower Street, Suite 3500
Los Angeles, CA 90071-2411
Tel:     213.972.4500
Fax:     213.486.0065
email:  wrobinson@foley.com
            jsobaje@foley.com

Kevin J. Malaney
**FOLEY & LARDNER LLP**
777 E. Wisconsin Avenue
Milwaukee, WI 53202
Tel:     414.319.7067
Fax:     414.297.4900
email:  kmalaney@foley.com

Clyde M. Siebman
**SIEBMAN BURG PHILLIPS & SMITH LLP**
300 N. Travis St.
Sherman, TX  75090-0070
Tel:     903.870.0070
Fax:     903.870.0066
email:  clydesiebman@siebman.com

Attorneys for Defendants **Hitachi, Ltd., Hitachi Data Systems Corporation, and Hitachi ID Systems, Inc.**

4821-7900-9354

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was filed electronically on June 28, 2017, in compliance with Local Rule CV-5(a).  As such, this document was served on all counsel who have consented to electronic service.


/s/  *William J. Robinson*
William J. Robinson

31